# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| **CHRISTOPHER BRYAN STEWART,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** <br> **5:24-cv-00003-TES** |
| **WARDEN GREGORY SAMPSON,** | |
| *Defendant.* | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Warden Gregory Sampson's Motion to Dismiss [Doc. 10] Plaintiff Christopher Bryan Stewarts's Complaint [Doc. 1]. Plaintiff, an inmate in the custody of the Georgia Department of Corrections' ("GDC"), filed this lawsuit on January 3, 2024, seeking relief under 42 U.S.C. § 1983 and the ADA for injuries he sustained at the hands of his fellow inmates while he was incarcerated at Central State Prison ("CSP") in Macon, Georgia. [Doc. 1, ¶¶ 1, 6]. As explained in further detail below, the Court finds that Plaintiff fails to state a claim under 42 U.S.C. § 1983 or the Americans with Disabilities Act ("ADA"), **GRANTS** Defendant's Motion to Dismiss, and **DISMISSES** Plaintiff's Complaint **with prejudice**. [*Id.*]; [Doc. 10].

## BACKGROUND[1]

Plaintiff "suffers from medically diagnosed disabilities" affecting his hearing and vision. [Doc. 1, ¶ 6]. The GDC transferred Plaintiff to Central State Prison sometime before January 2022 "specifically to be assigned to an ADA Dorm or ADA facility because he was a qualified disabled individual." [*Id.* at ¶ 7]. However, CSP's warden, Gregory Sampson, "refused to . . . assign Plaintiff to an ADA Dorm" and instead placed him in a dorm with no guards and "nondisabled[,] violent inmates." [*Id.* at ¶¶ 8–9].

Plaintiff suffered two violent attacks perpetrated by his fellow inmates at CSP. First, on January 6, 2022, Albert McKinney—an inmate who had attacked disabled inmates before—attacked Plaintiff, "breaking . . . [Plaintiff's] left arm." [*Id.* at ¶ 8]. Plaintiff was hospitalized that same day, underwent emergency surgery the next day, and left the hospital with a 10-inch rod in his arm. [*Id.* at ¶ 11]. Plaintiff endured a second surgery on his arm six weeks later, and his injury continues to cause chronic pain. [*Id.*]. After his second surgery, Plaintiff was placed back in the same dorm, again with no guards and "nondisabled[,] violent inmates." [*Id.* at ¶ 15]. Plaintiff suffered a second violent attack by two inmates on May 24, 2022, this time resulting in a broken right arm. [*Id.*].

---

[1] Unless otherwise noted, the following facts are taken from Plaintiff's Complaint [Doc. 1]. The Court assumes these facts to be true for the purpose of ruling on the pending Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Plaintiff was "put in solitary isolation," first for 30 days and then again for three and-a-half months. [2] [*Id*. at ¶ 12]. The exact timeline is unclear, but it seems that Plaintiff was likely placed in solitary isolation for 30 days after his first surgery and for three and a half months after his second surgery. [*Id*.]. At some point during his stay at CSP, Plaintiff filed grievances about his risk of harm at the hands of other inmates, but those grievances "were not accepted." [*Id*. at ¶¶ 1, 14].

Plaintiff filed this lawsuit on January 3, 2024, bringing claims under 42 U.S.C. § 1983 and the ADA against Warden Sampson in his individual capacity, and seeking compensatory and punitive damages as well as attorney's fees. [*Id*. at ¶ 16, 18, 20–22]. On June 11, 2024, Warden Sampson filed this Motion to Dismiss. [Doc. 10].

## LEGAL STANDARD

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*,

---

[2] Plaintiff asserts that this solitary isolation was "retaliat[ory]" but provides no details to support his conclusion. [*Id*.]; *see Iqbal*, 556 U.S. at 678.

550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted) (alteration in original). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must

take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556. With the foregoing standard in mind, and taking the facts asserted in Plaintiff's Amended Complaint as true, the Court rules on Defendants' Motion to Dismiss.

## **DISCUSSION**

As an initial matter, the Eleventh Circuit has not yet ruled on whether, in the

absence of a local rule, a district court must consider the merits of an unopposed motion to dismiss. *See Anderson v. Green*, No. Civ 05-0393-WS-M, 2005 WL 1971116, at *2 (S.D. Ala. Aug. 16, 2005) (collecting cases from the D.C. Circuit, First Circuit, and Third Circuit); *Magluta v. Samples*, 162 F.3d 662, 664–65 (11th Cir. 1998) (per curiam) (holding that the district court was permitted to grant an unopposed motion to dismiss without a discussion of the merits under a local rule). The Middle District of Georgia has no local rule addressing this issue, so the Court must follow prior Fifth Circuit precedent and evaluate the merits of Warden Sampson's Motion. *See Boazman v. Econs. Lab'y, Inc.*, 537 F.2d 210, 213 (5th Cir. 1976) (holding that plaintiff's initial failure to respond to a motion to dismiss and subsequent failure to respond after an express order to do so within ten days were insufficient grounds for dismissal).[3]

Warden Sampson moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). [Doc. 10, p. 1]. Plaintiff asserts in his Complaint that Warden Sampson bore direct responsibility for inmate security at CSP, "failed to protect [Plaintiff] . . . by assigning him to [a] known extremely dangerous dorm" instead of an "ADA dorm," and is thus individually liable under § 1983 and the ADA for Plaintiff's injuries. [Doc. 1, ¶¶ 13, 16]. In his Motion to Dismiss, Warden Sampson contends that

---

[3] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for [the court of appeals], the district courts, and the bankruptcy courts . . . ." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Plaintiff's Complaint fails to state a claim under the Eighth Amendment or the ADA, that Plaintiff's § 1983 claim cannot overcome the doctrine of qualified immunity, and that Warden Sampson is not subject to suit under the ADA in his individual capacity. [Doc. 10-1, pp. 3–11]. Plaintiff did not respond to Warden Sampson's Motion to Dismiss.

### A.    Plaintiff's Claim Under 42 U.S.C. § 1983

First, Warden Sampson moves to dismiss Plaintiff's claim under § 1983 for failure to state a claim and under the doctrine of qualified immunity. [Doc. 10-1, pp. 3–9]. Suffering violent assaults in prison simply isn't "part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Prison officials "must 'take reasonable measures to guarantee the safety of [their] inmates,'" but "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 832, 834 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

Rather, "[a] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). To state an Eighth Amendment claim of deliberate indifference under § 1983, a plaintiff "must allege facts sufficient to show '(1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation.'" *Lane*, 835 F.3d

at 1307 (quoting *Hale*, 50 F.3d at 1582).

### 1.    Substantial Risk of Serious Harm

The Court must first determine whether Plaintiff "allege[s] facts sufficient to show . . . 'a substantial risk of serious harm.' *Id.* A plaintiff may show a substantial risk of serious harm by either (1) presenting an individual risk that is personal to him or (2) showing a generalized risk based on dangerous prison conditions. *See Bugge v. Roberts*, 430 F. App'x 753, 758 (11th Cir. 2011); *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019). This element "is assessed objectively and requires [a] plaintiff to show 'conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety.'" *Lane*, 835 F.3d at 1307 (quoting *Hale*, 50 F.3d at 1582). In the Eleventh Circuit, "[t]here must be a 'strong likelihood' of injury, 'rather than a mere possibility'" before liability under the Eighth Amendment will attach. *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015). The fact that an inmate was assaulted cannot establish that a substantial risk of serious harm existed. *Smith v. Reg'l Dir. of Fla. Dep't of Corr.*, 368 F. App'x 9, 14 (11th Cir. 2010) (refusing to allow "advantage of hindsight" to determine whether there was a substantial risk of serious harm) (quoting *Purcell*, 400 F.3d at 1320).

Here, Plaintiff does not allege that CSP was a generally dangerous prison. "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm." *Lane*, 835 F.3d at 1307. However, "occasional, isolated attacks by one prisoner on another may not constitute" an Eighth Amendment violation. *Id.* Instead, it is

8

"confinement in a prison where violence and terror reign [that] is actionable." *Id.*

According to Plaintiff, Warden Sampson assigned him to a "known extremely

dangerous dorm" without guards, but Plaintiff doesn't allege sufficient facts to support

his conclusion that the dorm was "extremely dangerous." [Doc. 1, ¶¶ 8–9, 13]; *see Iqbal*,

556 U.S. at 678. To be sure, Plaintiff describes other inmates in his dorm as "nondisabled

violent inmates" and states that his first attacker, Albert McKinney, "had previously

attacked other disabled inmates." [Id. at ¶¶ 8–9]. But Plaintiff provides no information

about the frequency or recency of these attacks.

Moreover, even if there were no guards in Plaintiff's dorm when he was

attacked, "the Eighth Amendment does not require the uninterrupted personal

supervision of all inmates." *Estate of Owens v. GEO Group, Inc.*, 660 F. App'x 763, 773

(11th Cir. 2016) (citing *Purcell v. Toombs Cnty., Ga*, 400 F.3d 1313, 1323 n.23 (11th Cir.

2005)); *see* [Doc. 1, ¶¶ 8–9, 15]. Because Plaintiff's allegations fail to show more than

"occasional, isolated attacks by one prisoner on another" at CSP, Plaintiff must show an

individualized risk. *Lane*, 835 F.3d at 1307.

However, Plaintiff fails to allege a substantial risk of serious harm personal to

him. Plaintiff seems to argue that simply because he is disabled, he was at a substantial

risk of serious injury from Albert McKinney, who "had previously attacked other

disabled inmates." [*Id*. at ¶¶ 8–9]. But Plaintiff does not explain when those attacks

happened, how often McKinney attacked disabled inmates, or whether McKinney

singled out victims on account of their disability. *See* [Doc. 1]. As for the second attack, Plaintiff provides nothing from which the Court could infer that Plaintiff lived under an individualized risk of harm from the perpetrators. *See* [Doc. 1]; *Iqbal*, 556 U.S. at 678. Without more, Plaintiff does not properly allege that there was a strong likelihood of injury, as opposed to a possible risk. *Brooks*, 800 F.3d at 1301. Thus, Plaintiff fails to "allege[s] facts sufficient to show . . . 'a substantial risk of serious harm.' *Lane*, 835 F.3d at 1307 (quoting *Hale*, 50 F.3d at 1582); *see Bugge*, 430 F. App'x at 758; *Marbury*, 936 F.3d at 1233.

### 2.    Deliberate Indifference

To be thorough, the Court next turns to whether Plaintiff "allege[s] facts sufficient to show . . . '[Warden Sampson's] deliberate indifference to [a] risk.'" *Lane*, 835 F.3d at 1307 (quoting *Hale*, 50 F.3d at 1582). Defendants argue that the allegations in Plaintiff's Complaint "do not show that [Warden Sampson] was aware of a substantial risk of serious harm to Plaintiff" because "Plaintiff does not allege that Warden Sampson even knew that Plaintiff was disabled" or "that [Warden Sampson] was involved in Plaintiff's housing assignment." [Doc. 10-1, p. 4]. To be fair, Plaintiff does allege that he "tendered grievances putting [Warden Sampson] on notice of the substantial risk of serious injury and harm to [Plaintiff]" and that Warden "Sampson was the party directly responsible for the security and care of inmates at Central State Prison who assigned him to a known extremely dangerous dorm." [Doc. 1, ¶¶ 13–14

(cleaned up)]. Nonetheless, these allegations are insufficient to state a claim of deliberate indifference.

Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Id.* at 1308 (cleaned up). Stated differently, deliberate indifference has both a subjective and an objective component:

> Subjectively, the "official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she "knew of ways to reduce the harm' but knowingly or recklessly declined to act."

*Marbury*, 936 F.3d at 1233 (quoting *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 617, 620 (11th Cir. 2007)).

Plaintiff's only nonconclusory allegation relevant to Warden Sampson's subjective knowledge, or lack thereof, is that Plaintiff "tendered grievances." [Doc. 1, ¶ 14]. A prison official's subjective knowledge of a risk can be inferred where a prisoner filed a grievance that "provide[d] a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). On the other side of that coin, a court cannot impute knowledge of a risk to a prison official based on a vague grievance. *See id.*[4] Because Plaintiff only

---

[4] *See, e.g., Winstead v. Williams*, 750 F. App'x 849, 851 (11th Cir. 2018) (holding that a grievance's vague refences to "problems" and "trouble" with a cellmate, even when combined with a plea for urgent action, were not specific enough to impute subjective knowledge of a substantial risk of serious harm to prison

alleges that he "tendered grievances" and provides no facts from which the Court could infer that his "grievances put[ Warden] Sampson on notice" of any risk, Plaintiff fails to allege facts sufficient to show deliberate indifference. [Doc. 1, ¶ 14]; *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 617, 620); *Iqbal*, 556 U.S. at 678.

To the extent that Plaintiff alleges that Warden Sampson is liable for every action of his employees, § 1983 claims cannot be based upon respondeat superior or vicarious liability. *See* [Doc. 1, ¶¶ 16–20]; *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). And to the extent that Plaintiff bases his theory of liability in alleged violations of GDC's Standard Operating Procedures ("SOP"), the mere "imperfect enforcement of a SOP, in the absence of other evidence" is insufficient to violate § 1983. *Doe v. Scroggy*, No. 5:04-CV-173 (DF), 2006 WL 3022878, at *8 (M.D. Ga. Oct. 23, 2006); *see* [Doc. 1, ¶ 10].

Because Plaintiff does not "allege[s] facts sufficient to show . . . 'a substantial risk of serious harm'" or Warden Sampson's "deliberate indifference to that risk," Plaintiff fails to state a claim under the Eight Amendment. *Lane*, 835 F.3d at 1307 (quoting *Hale*, 50 F.3d at 1582); *McCullough*, 907 F.3d at 1333 (citing *Iqbal*, 556 U.S. at 678–79).

### B.    Plaintiff's Claim under the ADA

Second, Warden Sampson moves to dismiss Plaintiff's claim under the ADA,

---

wardens and unit manager at prison); *Carter*, 352 F.3d at 1349 (rejecting a deliberate-indifference claim where the plaintiff told a guard that his cellmate had said the plaintiff would help him fake a hanging "one way or another" because the statement "[did] not provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed").

arguing that he is not subject to suit under the ADA in his individual capacity and that, even if he were, Plaintiff fails to allege sufficient facts to state such a claim. [Doc. 10-1, pp. 9–11]. Plaintiff's allegations fall under Title II of the ADA, 42 U.S.C. §§ 12131–12134, which prohibits public entities from discriminating against individuals on account of their disability. *United States v. Georgia*, 546 U.S. 151, 154 (2006). The ADA defines a "public entity" as "(A) any state or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in [49 U.S.C. 24102(4)])." 42 U.S.C. § 12131.

Here, Plaintiff brought this claim under the ADA against Warden Sampson "in his individual capacity." [Doc. 1, ¶ 20]. However, Warden Sampson (in his individual capacity) is not a "public entity" subject to suit under the ADA, and the ADA "does not provide for individual liability. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Badillo v. Thorpe*, 158 Fed. Appx. 208, 211 (11th Cir. 2005) ("there is no individual capacity liability under Title II of the ADA"). Thus, Plaintiff fails to state a claim under the ADA. *Id.*

## CONCLUSION

No prisoner, including Plaintiff, should ever be violently assaulted simply because they are in prison. However, Plaintiff's Complaint fails to state a claim under § 1983 or the ADA. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss

[Doc. 10] and **DISMISSES** Plaintiff's Complaint [Doc. 1] **with prejudice**.

      **SO ORDERED**, this 12th day of July, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**